12527

BRADSHAW v. NATIONAL BANK OF SOUTH CAROLINA

(145 S. E., 417)

April, 1927.

*Mr. L. D. Jennings,* for appellant,

*Messrs. Purdy & Bland,* for respondent,

November 19, 1928.

The opinion of the Court was delivered by MR. CHIEF JUSTICE WATTS.

This was an action for damages, based on a failure to pay two checks drawn by the plaintiff on the defendant bank. The complaint contains two causes of action, and demand is made for actual and punitive damages. At the conclusion of the testimony of the plaintiff, a motion was made for a nonsuit, which was refused. The plaintiff sought, on the cross examination, to examine Mr. Rowland, the cashier of the bank, concerning matters which took place between him and the plaintiff, at Mr. Rowland's residence, some time after the checks had been dishonored, and sought to put in evidence a letter written after that time, by Mr. Rowland to the plaintiff. Over the objection of the plaintiff, the testimony and the letter were held to be incompetent.

At the conclusion of the testimony, the Court directed a verdict in favor of the defendant, and from these rulings this appeal is taken.

Under the plaintiff's evidence he says:

"I went to the first window and introduced myself to the man there, and he said his name was Yates. I took out the pass book and handed it to him, and I told him I was expecting to have to draw some checks on that account. I told him I had brought my boy to the hospital, and I was expecting to have to draw some checks on that account. He took the book and looked at it and said, 'All right, Mr. Bradshaw, we will be glad to take care of that for you.' "

Mr. Yates, the teller, denied that there was any such arrangement made, or any such agreement had with the plaintiff, and says that at the time alleged he was on a two weeks' vacation. He did not see the plaintiff, and he states that pass books were handed in to be balanced, the last of March, the last of June, the last of September, and the last of December, and that this was the custom. Mr. Yates says that to have drawn a check on the savings account, it should have been marked "savings department," or "savings."

Even admitting that he made the arrangement with Yates that he testified to, yet he is not entitled to recover, because the checks presented were not drawn on the savings account; in the savings account 30 days' notice was required. That notice could be waived by the bank. The plaintiff says he told Yates that he brought his boy to the hospital and that he expected to draw on that account and handed his book to Yates. Plaintiff did not draw any checks on the savings account of defendant bank, nor did he draw any check to pay the hospital.

When checks were presented drawn on the bank and not the check required by the bank of the savings department payable, not to his boy or the hospital, but to some one else, there was a noncompliance of the rules of the bank, and the bank had the right to refuse to cash the checks, because they were not drawn on the savings department.

The exceptions are overruled and judgment affirmed.

MESSRS. JUSTICES COTHRAN and CARTER concur.

MESSRS. JUSTICES BLEASE and STABLER dissent.

MR. JUSTICE CARTER (concurring) : I concur in affirming the judgment in this case for the reason that, under my view, the only reasonable inference to be drawn from the plaintiff's testimony, when construed most favorably in his behalf, is that Mr. Rowland, cashier of the defendant bank, agreed to pay plaintiff's checks out of plaintiff's savings account for the purpose of meeting hospital expenses for his son, and that the checks issued by the plaintiff were not for that purpose. A savings account is not a checking account that can be drawn on at will, and, while the bank under an agreement may waive the rules governing such account, as alleged and testified to by plaintiff, the agreement must be strictly construed. Under the agreement testified to by plaintiff, according to our view of plaintiff's testimony, the bank was under no obligation to pay checks issued by plaintiff except for hospital purposes, and there being no proof that the

checks in question were issued for that purpose, the defendant was entitled to direction of a verdict.

MR. JUSTICE BLEASE (dissenting) : I regret exceedingly that I find myself in disagreement with the conclusion announced by the Chief Justice in his opinion in this cause. I think the judgment below should be reversed, and the case remanded for a new trial, and will state, briefly, my reasons therefor.

In reviewing the action of the presiding judge in directing a verdict in favor of the defendant bank, we are required to view all the evidence and all the inferences which may be drawn therefrom in favor of the plaintiff. We are not to pass upon the credibility of the witnesses, and we express no opinion as to the direct conflict made by the testimony of the plaintiff and that of Mr. Yates, the teller of the bank, who testified for the defendant.

It is undisputed that the plaintiff had an account with the savings department of the bank, and that he had no other account. Under the agreement made by the plaintiff and the defendant, when the money was deposited, the plaintiff could not withdraw any of the deposit until 30 days' notice of his desire to withdraw had been given the bank, unless the bank waived the required notice. And in order to make withdrawals, the plaintiff had to present his pass book, so that the withdrawals could be entered thereon. There was no rule or agreement, so far as the testimony shows, that required the plaintiff to mark "savings account" on his checks. The testimony showed that the only checks furnished by the bank to the plaintiff for plaintiff's use in withdrawing his funds were checks which did not indicate that the words "savings account" were to be written on the checks in order for them to be accepted by the bank.

While the plaintiff was compelled to give the bank 30 days' notice before he could withdraw any of his deposit, the bank could waive that notice, and one of the issues in

the cause was whether or not the bank did waive such notice. On this point, the plaintiff testified as follows:

"I took out the pass book and handed it to him (Mr. Yates, the teller), and I told him that I was expecting to have to draw some checks on that account. I told him that I brought my boy to the hospital and that I was expecting to have to draw some checks on that account. He took the book and looked at it, and said, 'All right, Mr. Bradshaw, we will be glad to take care of them for you.' "

And plaintiff further testified that Mr. Yates took his pass book, kept it, and that the book was in the bank's possession at the time the checks drawn by the plaintiff were refused payment.

The returned checks showed that the reason given for nonpayment was because the plaintiff's account could not be located. The plaintiff offered to testify, which the Judge refused to permit him to do, that the cashier of the bank had told him that the checks had been turned down because they were not marked "savings account." I think this testimony should have been admitted, and that the exception because of the failure to admit the same should be sustained. I do not think, however, that the letter of July 16th was admissible.

The conscious failure to observe due care, under the circumstances surrounding the parties, has been repeatedly held in this state to be ground for punitive damages, and any evidence showing such conscious failure on the part of a defendant or his agent is sufficient to carry the question of willfulness to the jury.

I do not think the failure of the plaintiff's checks to show that they were for money to be applied to his son's hospital expenses has any material bearing upon any of the issues in the case, so far as requiring the submission of the case to the jury. Such failure might affect the amount of damages to which plaintiff should be entitled, if he was damaged at all. There was no agreement, according to plaintiff's testi-

mony, that the checks were to be marked in a way to show that the money was to be used for hospital expenses. I think the case should be remanded to the lower Court for jury trial as to both actual and punitive damages.

MR. JUSTICE STABLER concurs.